**Case No. 22-15384**

_____

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

_____

JANE DOE,
*Plaintiff - Appellant,*

v.

CITY OF CONCORD, et al.,
*Defendants - Appellees.*

_____

On Appeal from the United States District Court
For the Northern District of California
District Court Case No. 3:20-cv-02432-JD
The Honorable James Donato, Presiding

_____

**ANSWERING BRIEF OF DEFENDANTS/APPELLEES CONTRA COSTA COUNTY, DIANA BECTON, CHRIS WALPOLE, AND COLLEEN GLEASON**

_____

THOMAS L. GEIGER
County Counsel
PATRICK L. HURLEY
Deputy County Counsel
1025 Escobar Street, Third Floor
Martinez, CA 94553
Telephone: (925) 655-2200
Facsimile: (925) 655-2266
Email: patrick.hurley@cc.cccounty.us

Attorneys for Defendants/Appellees
Contra Costa County, Diana Becton, Chris Walpole
and Colleen Gleason

# **TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION .........................................................................1

STATEMENT OF ISSUES ...........................................................2

STATEMENT OF THE CASE.......................................................2

    I.    Statement of Facts........................................................2

        a.    Cotati Police Department Allegations .............................3

        b.    Sonoma County District Attorney's Office Allegations ................4

        c.    Concord Police Department Allegations .........................4

        d.    Contra Costa County District Attorney's Office Allegations..........5

    II.    Procedural History.....................................................6

ARGUMENT ...............................................................................8

    I.    Plaintiff Cannot Proceed on a Section 1983 Claim Based on Alleged Violation of the Equal Protection Clause ...............................................8

        a.    The Equal Protection Claim Based on Status as a Rape Victim is Meritless....................................................9

        b.    Plaintiff's Class of One Theory Also Fails.....................16

        c.    Conclusion..............................................................19

II.    The Individual Prosecutor Defendants Are Entitled to Absolute Immunity ..................................................................................19

III.   The County Defendants Are Entitled to 11th Amendment Immunity ..................................................................................20

IV.    Leave to Amend was Properly Denied ...............................................22

CONCLUSION ....................................................................................................23

CERTIFICATE OF COMPLIANCE .......................................................................24

STATEMENT OF RELATED CASES ....................................................................25

CERTIFICATE OF SERVICE ...............................................................................26

# TABLE OF AUTHORITIES

## Cases

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) .................. 15, 16

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998)...............................................12

*Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005)...................................................20

*Del Campo v. Kennedy*, 517 F.3d 1070 (9th Cir. 2008) ...........................................21

*Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2010)........................................15

*Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591 .....................................................17

*Estate of Macias v. Ihde*, 219 F.3d 1018 ...................................................................9

*Flowers v. City of Minneapolis*, 558 F.3d 794 (8th Cir. 2009) ...............................17

*Furnace v. Sullivan*, 705 F.3d 1021 (9th Cir. 2013)................................................12

*Garmon v. County of Los Angeles*, 828 F.3d 837 (9th Cir. 2016)...........................19

*Greenlaw v. Cnty. of Santa Clara*, 125 F. App'x 809 (9th Cir. 2005) ...................21

*Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010).........................................................22

*Imbler v. Pachtman*, 424 U.S. 409 (1976)................................................................19

*Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004)..............................18

*Lowe v. Monrovia*, 775 F.2d 998 (9th Cir. 1985) ....................................................15

*Milstein v. Cooley*, 257 F.3d 1004 (9th Cir. 2001) ..................................................19

*N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478 (9th Cir. 2008) ........................17

*Navarro v. Block*, 72 F.3d 712 (9th Cir. 1995)........................................................14

*O.L. v. Jara*, 2022 U.S. App. LEXIS 12873 .............................................................1

*O.L. v. Jara*, 2022 WL 1499656 ................................................................. 1, 13, 14

*Pitts v. Cnty. of Kern*, 17 Cal.4th 340 (1998) ...........................................21

*Reynolds v. Barrett*, 685 F.3d 193 (2d Cir. 2012) .....................................11

*Roe v. City & Cty. of San Francisco*, 109 F.3d 578 (9th Cir. 1997) ......................20

*Rosenbaum v. City and Cty. of San Francisco*,
    484 F.3d 1142 (9th Cir. 2007) ....................................................................9, 12

*United States v. Moore*, 543 F.3d 891 (7th Cir. 2008) ..................................... 17, 18

*Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) ....................................................20

*Wayte v. United States*, 470 U.S. 598 (1985) ........................................................9, 12

*Weiner v. San Diego County*, 210 F.3d 1025 (9th Cir. 2000)................................21

*Will v. Michigan Dep't of State Police,* 491 U.S. 58 (1989)....................................21

**INTRODUCTION**

This Court has already considered and rejected the arguments made by Plaintiff-Appellant Jane Doe relating to her equal protection claim. In *O.L. v. Jara*, Case No. 21-55740, the Court affirmed the dismissal of the plaintiff's equal protection claim relating to the failure of law enforcement in Southern California to investigate and file criminal charges against a person who allegedly sexually assaulted the plaintiff in 2019. *O.L. v. Jara*, 2022 U.S. App. LEXIS 12873 at *7; 2022 WL 1499656 at *2. In this case, plaintiff contends that her equal protection rights were violated by the failure of law enforcement in Northern California to investigate and file criminal charges against a person who allegedly sexually assaulted her in 2013 and 2014. O.L. and Jane Doe are the same person.

The argument and authority submitted by appellant in support of the equal protection claim in this case is, in large part, a word-for-word copy of the argument and authority submitted in support of that claim in the *O.L.* case. (Compare AOB at p. 10-19 with AOB in Case No. 21-55740 at p. 40-50.) The Court's decision affirming the dismissal of O.L.'s equal protection claim applies equally to the claims at issue in this appeal and the result should be the same; the Court should affirm the dismissal of appellant's complaint against all defendants/appellees and

1

award appellees costs on appeal.[1]

## STATEMENT OF ISSUES

1.      Did the district court properly find that plaintiff had not alleged facts sufficient to set forth a plausible claim that defendants/appellees intentionally discriminated against female sexual assault victims in violation of the Equal Protection Clause?

2.      Are the prosecutor defendants sued in their individual capacities entitled to absolute immunity?

3.      Are the County defendants and prosecutor defendants sued in their official capacities entitled to Eleventh Amendment immunity?

4.      Did the District Court properly deny plaintiff leave to amend?

## STATEMENT OF THE CASE

### I.      Statement of Facts

The district court granted defendants/appellees' motions to dismiss after taking as true the following factual allegations in the second amended complaint:

In 2013, plaintiff met a police officer with the Sonoma University Police Department, E.W., through an online dating app.  They dated for approximately ten

---

[1] For the sake of efficiency, the Contra Costa County Defendants/Appellees are filing a brief generally addressing all of plaintiff's claims against all defendants as well as plaintiff's claims against the Contra Costa defendants.  The remaining defendants/ appellees will file shorter briefs addressing any issues specific to the claims against them and/or a joinder in this brief.

months. In the course of their relationship, E.W. allegedly raped plaintiff approximately ten times. ER-180. Plaintiff claims that, at the time, she did not understand that she could be raped by someone she was dating. Id. at ¶ 63. Plaintiff claims that E.W. raped her in Cotati in 2013 and raped her in Concord in 2014. ER-181.

In 2019, after she was raped by another person she met on a dating app, plaintiff claims that a deputy district attorney in Los Angeles (one of the defendants in the O.L. case) explained to her that she could be raped by a dating partner. Plaintiff then reported the alleged rape by E.W. to the Cotati Police Department and the Concord Police Department in October 2019. ER-181.

### a.     Cotati Police Department Allegations

After she submitted a report to the Cotati Police Department, the case was assigned to Officer Bennet Knight. ER-181. Plaintiff claims Knight did nothing to investigate the case, including failing to interview E.W., and then "maliciously concluded the incidents [between plaintiff and E.W.] were consensual and the case was subsequently submitted to the Sonoma County District Attorney's Office ("SDA"). ER-181.

Plaintiff contacted Knight's supervisor, Sergeant Baudelia Gallo, to complain about Knight's lack of effort to investigate her case but Gallo "did nothing to address the situation or to initiate a review of the matter." ER-181.

3

### b.   Sonoma County District Attorney's Office Allegations

The Cotati Police Department case was submitted to the SDA for possible filing of criminal charges, but in February 2020, that office declined to file charges against E.W.  ER-188.  Plaintiff spoke to Deputy District Attorney Laura Passaglia about the declination decision.  Passaglia told plaintiff that the decision was made, in part, because her office did not find any corroboration for the allegations or have an opportunity to do any investigation of an incident that took place six years earlier, including interviewing any potential witnesses.  ER-188, 189.  Plaintiff emailed Passaglia's supervisor, Anne Masterson, and filed a complaint with the Sonoma County District Attorney, Jill Ravitch.  Plaintiff claims the complaints were ignored and no action was taken.  ER-189.

### c.   Concord Police Department Allegations

Plaintiff reported the allegations against E.W. to the Concord Police Department but was not contacted by anyone about the case for over a month before she got a call from Detective Renelle-Rey Valeros who asked if she was still living in Southern California.  Valeros also asked plaintiff what her "ultimate goal" was in reporting the alleged crime.  Valeros noted that plaintiff had waited a long time to report the crime, remarked about difficulties getting text messages admitted into evidence,

///

4

and interviewed plaintiff. ER-182. Plaintiff contends that Valeros refused to use a "pretext phone call" to try to get E.W. to admit to the crime. ER-183.

Plaintiff was unhappy with Valeros' work on the case and complained to a supervisor, Sergeant Cody Harrison. Harrison told her that the allegations were six years old and that there was no physical evidence to support her allegations. Harrison told her that the evidence did not support a conclusion of sexual assault but was consistent with consensual sexual activity. ER-183.

Plaintiff then complained to Lieutenant Tamra Roberts who informed her that the Contra Costa County District Attorney's Office ("CCDA") would not file charges based on her allegations, that there was no physical evidence to support the charges, and that plaintiff's testimony was not sufficient to support criminal charges. ER-183. Roberts also pointed out that plaintiff "got back together" with E.W. after every alleged sexual assault which plaintiff considered to be "victim shaming." ER-184.

Plaintiff complained about the behavior of the Concord PD officers to Concord Police Chief Swanger but he "took no action to correct any failures or to discipline his subordinates." ER-185.

### d. Contra Costa County District Attorney's Office Allegations

In January 2020, the CCDA declined to file charges against E.W. Plaintiff alleges that she spoke with defendant Colleen Gleason, a deputy district

attorney, who told her that the case was not being prosecuted because it was a "he said she said case" and that there was no evidence to prove that the sex was not consensual. Gleason also said that the jury might interpret the encounter as "rough sex" and would believe that plaintiff was upset because E.W. was seeing other people. Plaintiff showed Gleason text messages where E.W. said that plaintiff enjoyed the sex. ER-186.

Plaintiff was not happy with this information and asked to speak to Gleason's supervisor, Christopher Walpole. She spoke with Walpole by phone and he said that the CCDA only filed criminal cases it thought were winnable and that, without corroboration of plaintiff's claims, it would not file criminal charges against E.W. ER-186-87.

Plaintiff alleges that she "filed a complaint with the [CCDA] and [Diana Becton] was put on notice." ER-188. She alleges that Becton ratified the conduct of Gleason and Walpole by "failure to discipline or act[.]" ER-188.

## II.   Procedural History

Plaintiff filed a complaint containing the following causes of action: (1) section 1983 claim for violation of the equal protection clause, (2) gender-based conspiracy in violation of section 1985, (3) *Monell* claim against the entity defendants for an unconstitutional policy, (4) *Monell* claim for alleged failure to train, (5) violation of Article I, section 7 of the California Constitution, (6)

violation of Article I, section 28(b) of the California Constitution, (7) negligent supervision, (8) intentional infliction of emotional distress, and (9) violation of California Civil Code section 51.

Defendants filed motions to dismiss the complaint. Rather than oppose the motions, plaintiff filed a first amended complaint with the same causes of action. Defendants moved to dismiss the first amended complaint. The Court granted the motions to dismiss the first amended complaint on the grounds that plaintiff had not alleged facts to establish that there was no rational relationship between the alleged disparity of treatment of plaintiff's allegations against E.W. and a legitimate governmental purpose.

Plaintiff then filed a second amended complaint alleging the same causes of action with some additional facts in support of her claims. ER-163-208. Defendants filed motions to dismiss the second amended complaint. The district court granted the motions to dismiss with prejudice. ER-003-006. The district court held that plaintiff had not alleged facts sufficient to state a claim for an equal protection violation. The district court found that plaintiff's allegations amounted only to allegations that "her case was not satisfactorily investigated and pursued, when others' were." ER-006. The lower court noted that "the 'forms of state action' challenged by Doe 'by their nature involve discretionary decision-making based on a vast array of subjective, individualized assessments.'" ER-005.

7

Under those circumstances, the court found that, "allowing Doe to challenge the way her individual case was handled under a 'class of one' theory is a poor fit." ER-005. The district court concluded that plaintiff had not stated a cognizable equal protection claim against the defendants, dismissed the remaining federal claims based on the lack of a viable section 1983 claim, and declined to exercise supplemental jurisdiction over the related state law causes of action. ER-006. Plaintiff filed a notice of appeal. ER-257-260.

## ARGUMENT

### I.     Plaintiff Cannot Proceed on a Section 1983 Claim Based on an Alleged Violation of the Equal Protection Clause

The district court properly found that plaintiff had failed to state a viable section 1983 claim for an alleged violation of the Equal Protection Clause. The district court found that plaintiff had not plausibly alleged that police or prosecution services were administered in a discriminatory manner in her case. Instead, the district court concluded that plaintiff "has only stated that her case was not satisfactorily investigated and pursued, when others' were." ER-006.

In the district court, plaintiff's equal protection claim was based on a "class of one" argument. ER-005. On appeal, plaintiff has modified her argument and now contends that she alleged sufficient facts to support a claim that "as a female sexual assault victim, [she was] intentionally treated differently from victims of other crimes and male victims of sexual assaults." AOB at 7. The district court

8

correctly ruled that plaintiff failed to state a class of one equal protection claim and that she failed to state a claim that, as a female sexual assault victim, she was intentionally treated differently from victims of other crimes and male victims of sexual assaults. The Court should affirm the dismissal of the equal protection claim under either theory.

### a. The Equal Protection Claim Based on Status as a Rape Victim is Meritless

Plaintiff's first theory for the equal protection claim is that defendants intentionally treat sexual assault victims less favorably as compared to victims of other crimes, particularly victims of aggravated assault and homicide.

"There is a constitutional right . . . to have police services administered in a nondiscriminatory manner - a right that is violated when a state actor denies such protection to disfavored persons." *Estate of Macias v. Ihde*, 219 F.3d 1018, 1028. (9th Cir. 2000). "In the context of discriminatory policing, a plaintiff must allege and prove that: (1) defendants' enforcement of the law had the effect of discriminating against members of the disfavored group/class; and (2) the police were motivated by a discriminatory purpose." *Rosenbaum v. City and Cty. of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007) (citing *Wayte v. United States*, 470 U.S. 598, 608 (1985)).

The equal protection claim based on plaintiff's status as a rape victim fails because she did not establish disparate treatment of rape victims versus victims of

murder, battery, or other violent crimes. The evidence of alleged disparate treatment does not establish a plausible claim that rape victims received unequal treatment by the defendants.

Plaintiff's claim that rape victims receive unequal treatment by the law enforcement defendants is mainly based the investigation of her case. She alleged that the Cotati defendants did not get a statement from E.W. as part of the rape investigation (ER-181), and that the Concord defendants questioned her motives and timing for reporting the rape. ER-183-184. She also alleged the CCDA "valued" E.W.'s version of the incidents over hers, considered "stereotype[s] about how victims should behave," and attacked her motive for coming forward with the allegations about E.W. ER-187. As for the SDA, she claimed that they failed to meet with her in person, improperly considered her delay in bring the allegations to law enforcement, and did not have a policy for prosecuting sexual assault cases. ER-124, 125, 134.

These allegations do not tend to prove that defendants treated plaintiff unfavorably because of her status as a rape victim. On the contrary, plaintiff's allegations confirm that two police departments investigated her allegations and both Contra Costa and Sonoma counties declined to prosecute the case against E.W. for a variety of reasons, all of which have a rational relationship to the legitimate state purpose of investigating and prosecuting crimes.

10

Plaintiff attempted to rely on statistics relating to the arrest rate and clearance rate in California for rape as compared to homicide and aggravated assault. ER-173, 174. Plaintiff also alleged that the prosecution rates for rape cases by the CCDA and SDA are 34% and 31% respectively, which plaintiff describes as "low." ER-170. In addition, plaintiff claims that, in 2015, there were 2,400 untested rape kits found in Contra Costa County. ER-177. Those allegations do not support an equal protection claim against defendants.

The allegations of "low" arrest and prosecution rates for rape cases in a vacuum do not tend to prove the defendants devote fewer resources to the prosecution of rape cases as the plausible cause for the discrepancy. Rape investigations and prosecutions present challenges that do not apply to other violent crimes, including the lack of independent witnesses, the lack of physical evidence that a rape occurred (as plaintiff admits in her complaint), and the fact that consent is not a defense to other violent crimes. These challenges, among others, make it impossible to conclude that any discrepancy in the rates of arrest, prosecution, or conviction for rape crimes is the result of discriminatory conduct on the part of any of the defendants. Moreover, even if the statistics relied on by plaintiff could support a claim against the entity defendants, they do not support an equal protection claim against any of the individual defendants. *See Reynolds v. Barrett*, 685 F.3d 193, 204 (2d Cir. 2012) ("statistics demonstrating employer-wide

11

discrimination are insufficient to establish which individual defendants engaged in purposeful discrimination").

Even if plaintiff could plausibly allege that sexual assault victims are provided with inferior police or prosecution services as compared to general assault victims, the equal protection claim still fails because plaintiff did not and cannot allege facts to establish that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998))." To show discriminatory purpose, a plaintiff must establish that "the decision-maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Rosenbaum*, 484 F.3d 1142, 1153 (quoting *Wayte*, 470 U.S. at 610.)

The allegations reflect that plaintiff's claims against E.W. were investigated by two police departments and possible criminal charges were considered by two different prosecutors. Both Contra Costa County and Sonoma County declined to prosecute, citing credibility concerns, lack of corroborating evidence, and the passage of time between the alleged rape and when it was reported. ER-188, 189. These allegations establish that plaintiff's case was considered based on its own merits. There are no facts alleged in the complaint to support a conclusion that any

12

of the defendants' actions were motivated by an intent to provide rape victims with inadequate or unequal police or prosecution services.

In the second amended complaint, plaintiff identified steps the police or prosecutors could have taken to mitigate the problems with the potential criminal case against E.W., including interviewing additional witnesses or hiring expert witnesses. ER-193. Plaintiff also suggested that the reasons given for the failure to arrest or charge E.W. are pretextual because, for instance, Bill Cosby was charged a decade after his alleged crimes and another sexual assault case was charged despite the lack of eyewitnesses. ER-193. These allegations simply show that each case must be evaluated on its own merits and a prosecutor's decision to charge one case but not another cannot be a basis for an equal protection claim absent evidence of invidious discrimination.

In a case closely analogous to the instant case, *O.L. v. Jara*, 2022 WL 1499656 (9th Cir. 2022), this same plaintiff alleged that the police officer to whom she reported an allegation of rape questioned her about her motive for reporting the rape, the same officer asked her, "What made her think she was a victim of rape," and plaintiff concluded "[v]ictims of other type[s] of crimes would not be asked the same question." *O.L.*, 2022 WL 1499656 at *2. Reviewing the dismissal of plaintiff's equal protection cause of action, this Court affirmed the district court's

///

13

decision, holding that plaintiff had "not allege[d] facts showing that the officers treated her investigation differently than other criminal investigations." *Id*.

Plaintiff cited to *Navarro v. Block*, 72 F.3d 712 (9th Cir. 1995) for the proposition that an equal protection claim may lie where a police officer intentionally discriminates against victims of domestic violence. (AOB at 11.) Plaintiff characterized the facts of *Navarro* as being "closely analogous" to this case. That characterization is incorrect.

In *Navarro*, this Court reversed summary judgment in favor of the County of Los Angeles on an equal protection claim based on evidence that the county treated domestic violence victims less favorably than victims of other crimes. That conclusion was based on the uncontroverted testimony of a dispatcher that the county had a practice of affording victims of domestic violence less police protection than other crime victims because it did not classify domestic violence 911 calls as emergencies. *Id.* at 715. The Court went on to find that, although there was no evidence that the county intended to discriminate against women victims of domestic violence, the equal protection claim could proceed because the plaintiffs "could prove that the domestic violence/non-domestic violence classification fails even the rationality test." *Id.* at 717.

Here, unlike in *Navarro*, plaintiff has not alleged any facts to establish that the defendants discriminate against victims of sexual assault or female victims of

sexual assault. Like in *Navarro*, plaintiff identified no facts to support a conclusion that any of the defendants intended to discriminate against sexual assault victims or women in the way they investigated and analyzed plaintiff's allegations against E.W. There is simply no evidence of intentional discrimination on the part of the defendants.

This lack of evidence is illustrated by cases where courts have identified the types of evidence and allegations that would support a potential finding of intentional discrimination.

For instance, in *Lowe v. Monrovia*, 775 F.2d 998, 1007 (9th Cir. 1985), a case cited by plaintiff in the opening brief (AOB at 11), one of the defendants made statements to the plaintiff that could support a finding of discriminatory animus. Based on those statements and as well as other evidence of disparate treatment of other people of the plaintiff's race, the Court found that there was sufficient evidence to create an inference of discrimination sufficient to establish a prima facie case.

In *Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2010), the defendants did not dispute on appeal that the plaintiff "pled facts from which a trier of fact could infer racial discrimination." *Id.* at 1006.

Finally, in *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988), the plaintiff alleged that police officers who responded to a call that she was

15

assaulted by her husband discriminated against her based on her gender and marital status.  The Court reversed the district court's dismissal of her complaint, in part, based on allegations that a police officer who refused to arrest plaintiff's husband for domestic violence told the plaintiff he "did not blame plaintiff's husband for hitting her, because of the way she was 'carrying on.'"  *Id.* at 701.  According to the Court, those comments "strongly suggest an intention to treat domestic abuse cases less seriously than other assaults, as well as an animus against abused women."  *Id.*

In this case, plaintiff has alleged only that the defendants made comments to her regarding the evidence and the strength of a potential criminal case against E.W.  There are no allegations in the complaint relating to comments by any of the defendants that would support a conclusion that they intended to treat sexual assault cases less seriously than other assault cases or reveal any animus toward rape victims, female rape victims, or even plaintiff personally.

### b.     Plaintiff's Class of One Theory Also Fails

To the extent plaintiff alleges a "class of one" theory to support her equal protection claim, that theory also fails as a matter of law.   "When an equal protection claim is premised on unique treatment rather than on a classification, the Supreme Court has described it as a 'class of one' claim.  In order to claim a violation of equal protection in a class of one case, the plaintiff must establish that

the [defendant] intentionally, and without rational basis, treated the plaintiff differently from others similarly situated." *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).

The Supreme Court has held that the "class of one" equal protection theory does not apply when the state actions at issue "by their nature involve discretionary decision-making based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 603 (2008) (the class-of-one theory does not apply in the public employment context). "[A]llowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such officials are entrusted to exercise." *Id.* at 604.

Other courts have refused to apply the class of one theory in the context of law enforcement decisions. In *Flowers v. City of Minneapolis*, 558 F.3d 794 (8th Cir. 2009), the Eighth Circuit noted that "[a] police officer's decisions regarding whom to investigate and how to investigate are matters that necessarily involve discretion." *Id.* at 799 (citation omitted). The Eighth Circuit held that "while a police officer's investigative decisions remain subject to traditional class-based equal protection analysis, they may not be attacked in a class-of-one equal protection claim." *Id.* at 799-800.

In *United States v. Moore*, 543 F.3d 891, 895 (7th Cir. 2008), a criminal defendant argued on appeal that the government committed a "class of one" equal

protection violation because it treated him differently from the defendants in a different drug-conspiracy case. The Seventh Circuit held that "an exercise of prosecutorial discretion cannot be successfully challenged merely on the ground that it is irrational or arbitrary; in the realm of prosecutorial charging decisions, only invidious discrimination is forbidden." *Id.* at 900 (citations omitted). The *Moore* court concluded that *Engquist*'s holding was "equally applicable to the exercise of prosecutory discretion." *Id.* at 901.

Finally, in *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004), the court recognized the dangers inherent in extending a class of one theory to claims involving a failure to prosecute. The *Jennings* court noted that, because "the exercise of prosecutorial discretion implicates a host of variables from the relative culpability of the defendants to the optimal deployment of prosecutorial resources, it is correspondingly more difficult to bring an equal protection claim than in the classic case of discrimination against a suspect claim." *Id.* at 1214.

Based on the foregoing, the Court should find that plaintiff cannot bring an equal protection claim based on a "class of one" theory in the context of a prosecutor's decision not to bring criminal charges against a particular person based on the specific circumstances set forth in the second amended complaint.

///

///

18

### c.    Conclusion

Whether the equal protection claim is based on plaintiff's status as a rape victim, a female rape victim or as a class of one, the allegations in the second amended complaint are insufficient as a matter of law to state a plausible claim for a violation of the Equal Protection Clause against any of the defendants.  The Court should affirm the district court's order dismissing the second amended complaint with prejudice.

## II.    The Individual Prosecutor Defendants Are Entitled to Absolute Immunity

Even if the Court found that plaintiff could allege an equal protection claim, the section 1983 claims against the individual prosecutor defendants should be dismissed based on absolute prosecutorial immunity.

Prosecutors have absolute immunity when acting within the scope of their duties as an advocate for the state.  *Milstein v. Cooley*, 257 F.3d 1004, 1008 (9th Cir. 2001).  Absolute immunity is determined based on "whether the acts complained of were within the scope of the prosecutorial function."  *Garmon v. County of Los Angeles*, 828 F.3d 837, 843 (9th Cir. 2016).  Prosecutorial immunity protects eligible government officials when they are acting pursuant to their official role as advocates for the state performing functions "intimately associated with the judicial phase of the criminal process."  *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).  The decision whether to prosecute or not is intimately associated

19

with the judicial phase of the criminal process. *Roe v. City & Cty. of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997) ("Public policy considerations make an even stronger argument for absolute immunity for failure to prosecute than for actual prosecution."); *see also Botello v. Gammick*, 413 F.3d 971, 977 (9th Cir. 2005).

The discretionary decisions by defendants Passaglia, Masterson, Ravitch, Gleason, Walpole, and Becton not to prosecute E.W. were made within the scope of their prosecutorial roles. The decision to forego prosecution is intimately associated with the judicial phase of the criminal process and therefore within the purview of absolute immunity. Moreover, Masterson, Ravitch, Walpole and Becton are entitled to immunity for any claim that they failed to adequately train, supervise or discipline Gleason, Passaglia, or any other deputy district attorney. *Van de Kamp v. Goldstein*, 555 U.S. 335, 349 (2009) (absolute immunity applies to claims of training, supervision and information management). The Court should affirm the dismissal of the federal claims against the individual defendants based on absolute immunity.

## III. The County Defendants Are Entitled to 11th Amendment Immunity

The counties and the individual defendants sued in their official capacities are also entitled to 11th Amendment immunity because the prosecutor defendants acted on behalf of the State, not the County, in deciding whether to prosecute E.W.

20

and when "investigating and proceeding with criminal prosecutions." *Weiner v. San Diego County*, 210 F.3d 1025, 1031 (9th Cir. 2000).

States, other governmental entities that are considered "arms of the state," and state officials sued in their official capacities are entitled to Eleventh Amendment immunity and are not considered "persons" for purposes of section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). "California [district attorneys] serve both state and county functions: They act as state officials, and so possess Eleventh Amendment immunity, when 'acting in [their] prosecutorial capacity.'" *Del Campo v. Kennedy*, 517 F.3d 1070, 1073 (9th Cir. 2008). A "district attorney represents the state when preparing to prosecute and when prosecuting criminal violations of state law" as well as "when training and developing policy in these areas." *Pitts v. Cnty. of Kern*, 17 Cal.4th 340, 362 (1998).

The State of California has not waived sovereign immunity with regard to this action or with regard to these types of claims brought in federal court. The county defendants were acting in a prosecutorial capacity when making the decision whether to prosecute E.W. Consequently, the claims against the counties, as well as Passaglia, Masterson, Ravitch, Gleason, Walpole, and Becton in their official capacities, are barred by 11th Amendment immunity. *See, e.g., Greenlaw v. Cnty. of Santa Clara*, 125 F. App'x 809, 810 (9th Cir. 2005). The Court should

21

affirm the dismissal of the section 1983 claims against the county defendants in their official capacities.

## IV. Leave to Amend was Properly Denied

The Court should also affirm the district court's order dismissing the complaint without leave to amend. The second amended complaint was plaintiff's third attempt to allege facts sufficient to state a claim against any of the defendants for a violation of her federal civil rights. In opposition to the motions to dismiss, plaintiff did not identify any additional facts she could allege to remedy the defects in the allegations in the second amended complaint. In fact, plaintiff did not even ask for leave to amend in that opposition. ER-006. The district court construed the complaint liberally and gave appellant several chances to amend. The district court did not abuse its discretion in denying leave to amend. *See Hebbe v. Pliler*, 627 F.3d 338, 341-42 (9th Cir. 2010).

///

///

///

///

///

///

///

22

## CONCLUSION

The district court did not err in granting defendants' motions to dismiss.

That judgment should be affirmed and defendants should be awarded their costs on

appeal.

DATED: October 17, 2023    THOMAS L. GEIGER
COUNTY COUNSEL


By:    */s/ Patrick L. Hurley*
        Deputy County Counsel

*Attorneys for Defendants and Appellees*
CONTRA COSTA COUNTY, DIANA
BECTON, CHRIS WALPOLE, AND
COLLEEN GLEASON

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, that the Answering Brief by appellees Contra Costa County, Diana Becton, Chris Walpole, and Colleen Gleason is proportionally spaced, has Times New Roman typeface of 14 points, and contains 5,771 words.


DATED: October 17, 2023     By:___*/s/ Patrick L. Hurley*_____
                                 Deputy County Counsel

                                 *Attorneys for Defendants and Appellees*
                                 CONTRA COSTA COUNTY, DIANA
                                 BECTON, CHRIS WALPOLE, AND
                                 COLLEEN GLEASON

## STATEMENT OF RELATED CASES

Appellees Contra Costa County, Diana Becton, Chris Walpole and Colleen

Gleason are not aware of any related cases pending in this Court, pursuant to

Circuit Rule 28-2.6.

DATED: October 17, 2023      By:___ */s/ Patrick L. Hurley*_____
                                 Deputy County Counsel

                                 *Attorneys for Defendants and Appellees*
                                 CONTRA COSTA COUNTY, DIANA
                                 BECTON, CHRIS WALPOLE, AND
                                 COLLEEN GLEASON

25

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 17, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.


DATED: October 17, 2023       By:___*/s/ Patrick L. Hurley*_____
                                                   Deputy County Counsel

                                                   *Attorneys for Defendants and Appellees*
                                                   CONTRA COSTA COUNTY, DIANA
                                                   BECTON, CHRIS WALPOLE, AND
                                                   COLLEEN GLEASON